## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

| | |
|---|---|
| JOHN H. SCHIPP, Administrator of the<br>Estate of Jerome Neufelder, Deceased, and<br>KENNETH BRACY and JOCELYN BRACY | PLAINTIFFS |
| v.                    No. 2:03CV00175 JLH | |
| GENERAL MOTORS CORPORATION and<br>ANN KENNEDY | DEFENDANTS |
| ANN KENNEDY | CROSS-PLAINTIFF |
| v. | |
| GENERAL MOTORS CORPORATION | CROSS-DEFENDANT |

### OPINION AND ORDER

General Motors issued three subpoenas duces tecum to obtain documents prepared by Ann Kennedy's insurance carrier during the investigation of the accident at issue in this action. Specifically, GM sought to discover a recorded statement of Kennedy taken on July 26, 2002; a summary of that recorded statement prepared on July 27, 2002; an investigation report of the insurance adjuster prepared on August 13, 2002; and witness statements obtained by Kennedy's insurance carrier. Kennedy has objected. GM has moved to compel. GM asks for an award of the reasonable expenses incurred in making this motion, including reasonable attorney's fees, pursuant to Rule 37(a)(4) of the Federal Rules of Civil Procedure.

### I.

Ann Kennedy was driving a 2001 Chevrolet Silverado on Interstate Highway 40 in Crittenden County, Arkansas, when her vehicle crossed the median and struck an oncoming 2000 Toyota Corolla driven by Jerome Neufelder. The collision caused either the Silverado or the Corolla to collide with a Plymouth Voyager van owned by Kenneth and Jocelyn Bracy. Kenneth and Jocelyn

Bracy were injured.  Neufelder was killed.

## II.

Kennedy gave a statement to her insurer on July 26, 2002, two days after the accident.  She argues that this statement is protected by the attorney-client privilege.  In diversity cases, federal courts follow state law on questions of privilege.  *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *see also* Fed. R. Evid. 501.  Arkansas has not ruled on whether a communication between an insurer and its insured may be protected by the attorney-client privilege. Many states – and what appears to be a majority – have held, depending on varying factors, that such a communication may be protected by the privilege.  *See, e.g.*, *State Farm Fire and Cas. Co. v. Superior Court*, 265 Cal. Rptr. 372, 375 (Cal Ct. App. 1989); *Bellman v. District Court*, 531 P.2d 632, 634 (Colo. 1975) ("[W]e hold that the insurance investigator who took the petitioner's statement was, in effect, an agent of the attorneys for the purpose of acquiring and transmitting this information to them.  As such, the communication falls within the attorney-client relationship and is therefore privileged."); *Staton v. Allied Chain Link Fence Co.*, 418 So. 2d 404, 405-06 (Fla. Dist. Ct. App. 1982); *Pietro v. Marriott Senior Living Servs. Inc.*, 810 N.E.2d 217, 226 (Ill. App. Ct. 2004) (citing *People v. Ryan*, 197 N.E.2d 15 (Ill. 1964)); *Richey v. Chappell*, 594 N.E.2d 443, 446-47 (Ind. 1992); *Asbury v. Beerbower*, 589 S.W.2d 216, 217 (Ky. 1979) ("When a person has had an automobile accident that may result in litigation he would normally confide in counsel.  If, however, he is insured, he has paid an insurance company to exercise that choice for him.  He should not be penalized for his prudence in that respect."); *Cutchin v. State*, 792 A.2d 359, 366 (Md. Ct. Spec. App. 2002); *Grewell v. State Farm Mut. Auto. Ins. Co.*, 102 S.W.3d 33, 36-37 (Mo. 2003) (citing *State ex rel. Cain v. Barker*, 540 S.W.2d 50, 55 (Mo. 1976) ("[B]y the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and

the conduct of the defense of any civil litigation. . . . We believe that the same salutary reasons for the privilege as exist when the communication is directly between the client and attorney . . . .")); *Brakhage v. Graff*, 206 N.W.2d 45, 47-48 (Neb. 1973); *Pfender v. Torres*, 765 A.2d 208, 213 (N.J. Super. Ct. App. Div. 2001); *Kandel v. Tocher*, 256 N.Y.S.2d 898, 902 (N.Y. App. Div. 1965) ("[A]utomobile liability insurance, just because it is litigation insurance, is an institutionalized substitute for the individualized attorney-client relationship in litigation or contemplated litigation. In appropriate and parallel contexts it is entitled to similar protection."); *In re Klemann*, 5 N.E.2d 492, 495 (Ohio 1936); *Heidebrink v. Moriwaki*, 706 P.2d 212, 217 (Wash. 1985) (holding that statements from an insured to his insurer are protected by the work-product doctrine); *State ex rel. Med. Assurance of W. Va., Inc. v. Recht*, 583 S.E.2d 80, 88 (W. Va. 2003); *Thomas v. Harrison*, 634 P.2d 328, 334 (Wyo. 1981) (holding that a statement to a medical-malpractice liability insurer was privileged).

The courts have looked at a number of factors to determine whether a statement given by an insured to his insurer is privileged.  Those factors include:  1) whether the insurance contract obligates the insurance company to defend claims, *Pietro*, 810 N.E.2d at 226; *Richey*, 594 N.E.2d at 446; *Grewell*, 102 S.W.3d at 37; *Brakhage*, 206 N.W.2d at 48; 2) whether the relationship between the insurer and the attorney exists at the time of the communication between the insurer and the insured, *Kay Labs., Inc. v. District Court*, 653 P.2d 721, 723 (Colo. 1982); 3) whether the insurer is advised of the confidential information at the direction of an attorney, *Pfender*, 765 A.2d at 213; *Recht*, 583 S.E.2d at 88; and 4) whether the communication is made for the dominant purpose of litigation, *Cutchin*, 792 A.2d at 366; *Pfender*, 765 A.2d at 213.

A number of jurisdictions have held that statements between an insured and insurer are not privileged.  *See, e.g.*, *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 477-80 (predicting how

North Carolina courts would decide this issue); *Langdon v. Champion*, 752 P.2d 999, 1002-04 (Alaska 1988) ("[T]he attorney-client privilege does not extend to statements made by an insured to his insurer . . . ."); *Longs Drug Stores v. Howe*, 657 P.2d 412, 415-16 (Ariz. 1983) ("[S]tatements taken from an insured by insurance investigators working on a case in anticipation of litigation are not communications to counsel and are not within the attorney-client privilege."); *Conley v. Graybeal*, 315 A.2d 609, 610 (Del. Super. Ct. 1974); *DiCenzo v. Izawa*, 723 P.2d 171, 176-77 (Haw. 1986) ("'The insurance carrier has the right to review and consider the statement submitted by the insured for any legitimate purpose connected with [its] business . . . . The use of the statement for a purpose adverse to the interest of the insured is certainly inconsistent with the claim of privilege on his behalf.'" (quoting *Butler v. Doyle*, 544 P.2d 204, 207 (Ariz. 1975))); *Alseike v. Miller*, 412 P.2d 1007, 1017 (Kan. 1966); *Jacobi v. Podevels*, 127 N.W.2d 73, 76 (Wis. 1964) (overruling previous Wisconsin case law).

Although the Supreme Court of Arkansas has not decided this issue, its decisions make clear two relevant aspects of the attorney-client privilege in Arkansas. First, "[t]he burden of showing that a privilege applies is upon the party asserting it." *Kinkhead v. Union Nat'l Bank*, 51 Ark. App. 4, 11, 907 S.W.2d 154, 158 (1995) (citing *Shankle v. State*, 309 Ark. 40, 827 S.W.2d 642 (1992)). Thus, the burden is on Kennedy to show that her statement is privileged. Second, "[t]he purpose of the attorney-client privilege is to promote 'full and frank communication' between attorneys and clients, and that, in turn, promotes the observance of law and administration of justice." *Holt v. McCastlain*, 357 Ark. 455, 464, 182 S.W.3d 112, 118 (2004). It should be noted that other states have cited the same purpose in recognizing a statement between an insured and an insurer as protected by the attorney-client privilege. *See, e.g.*, *Richey*, 594 N.E.2d at 446 ("Uncertainty about whether the insured's statements are discoverable . . . undermines what should be a cooperative

4

relationship among the insured, insurer and attorney.  An insured's relationship to the insurance company requires full disclosure by the insured without fear that the statement may be later obtained by the claimant."); *Kandel*, 256 N.Y.S.2d at 902 ("It is of the greatest importance that an insured be encouraged to make complete and candid disclosure to his liability insurer.").

While no published opinion of the Arkansas appellate courts is on point, two cases suggest what the Supreme Court of Arkansas might hold.  *See generally Holt*, 357 Ark. 455, 182 S.W.3d 112; *Courteau v. St. Paul Fire & Marine Ins. Co.*, 307 Ark. 513, 821 S.W.2d 45 (1991).   In *Courteau*, a hospital's insurance carrier hired an attorney to investigate the circumstances surrounding a potential claim.  307 Ark. at 514, 821 S.W.2d at 46.  The attorney then "immediately requested statements from employees involved who were potential defendants."  *Id*.  The Supreme Court of Arkansas held that the hospital employees and physicians were "clients" of the hospital's attorney, and the communications between them were therefore privileged in spite of the fact that some of those communications were "relayed through corporate channels."  307 Ark. at 516, 821 S.W.2d at 47.

Perhaps more illuminating is *Holt*, where an automobile accident caused five deaths, the insurance carrier hired attorneys to represent the insured, and the attorneys in turn hired an expert to prepare an accident reconstruction report.   357 Ark. at 458, 182 S.W.3d at 114.  A prosecuting attorney then issued a subpoena duces tecum to the accident reconstructionist to obtain a complete copy of the report.  *Id*. at 459, 182 S.W.3d at 114.  The court held, however, that the report, as well as all communications between the attorneys, the reconstructionist, and the insured, were "protected by attorney-client privilege . . . ."  *Id*. at 458-64, 182 S.W.3d at 114-18.  In reaching its conclusion, the court applied Arkansas Rule of Evidence 502, which states in pertinent part:

(a) Definitions.  As used in this rule:

* * *

(2) A representative of the client is *one having authority to obtain professional legal services*, or to act on advice rendered pursuant thereto, on behalf of the client.

* * *

(4) A "representative of the lawyer" is one employed by the lawyer to assist the lawyer in the rendition of professional legal services.

(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(b) General Rule of Privilege.   A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) *between himself* or his representative *and* his lawyer or *his lawyer's representative*, (2) between his lawyer and the lawyer's representative . . ., [or] (4) between representatives of the client or *between the client and a representative of the client* . . . .

Ark. R. Evid. 502 (emphasis added); *Holt*, 357 Ark. at 461-64, 182 S.W.2d at 116-18.  Concluding that the accident reconstructionist was a "representative of the lawyer" and that the communication had been confidential, the court found that the communications between the reconstructionist and the attorney were privileged under Rule 502(b)(2), while the communications between the reconstructionist and the insured were privileged under Rule 502(b)(1).  *See id*. at 462-64, 182 S.W.3d at 117-18.

The Supreme Court of West Virginia has held, "Significantly, 'among those considered a representative of the lawyer is an insurance company's investigator who takes a statement from an insured to assist the insurance company's lawyer in defending a possible claim against the insured.'" *Recht*, 583 S.E.2d at 88 (quoting 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 5-4(E)(5), at 5-129 (4th ed. 2000)).  It might be equally accurate to say that the insurance adjuster is a representative of the insured for purposes of obtaining legal services because the typical automobile liability insurance policy imposes on the insurer the duty of defending the insured and

6

gives to the insurer the right to select counsel, who then is the insured's attorney. Whether the insurance investigator is considered a representative of the insured or a representative of the lawyer, a communication between the insured and insurer would be protected by Rule 502.

GM cites *Morgan v. Wells*, 242 Ark. 499, 415 S.W.2d 323 (1967), for the propositions that the attorney-client privilege is to be narrowly construed in Arkansas and that "[t]here is no privilege as to statements by a client to his attorney for communication to a third person." *Id.* at 506-07, 415 S.W.2d at 327. However, in *Morgan* and in the case upon which *Morgan* relied, the client made a statement to the attorney and then directed the attorney to communicate that statement to a third person for the purpose of conducting negotiations. *Id.* at 507, 415 S.W.2d at 327-28. The clients in those cases did not intend their statements to be confidential. Here, Kennedy claims that a "representative of Defendant Kennedy's insurer recorded her statement regarding the accident giving rise to the present litigation. This statement was provided to Defendant Kennedy's attorneys in order to defend the claim against her." Thus, *Morgan* is not on point.

Although the matter is not free from doubt, this Court believes that on the facts of this case the Supreme Court of Arkansas would find that Kennedy's recorded statement to her insurer is protected by the attorney-client privilege. It should have been obvious when Kennedy gave her recorded statement that claims would be made against her and that she would call upon her insurer to defend those claims. Although the policy is not in the record, the Court assumes that it is a standard automobile liability policy pursuant to which the insurer selects and compensates defense counsel and pursuant to which the insured must cooperate with the insurer. Kennedy was entitled to expect that her insurance carrier would engage a lawyer to represent her, which means that she was entitled to view her insurer as her representative for purposes of obtaining legal services. Kennedy's statement to her insurer was a step in the process of obtaining legal representation

pursuant to the insurance contract.  GM's motion compelling discovery of Kennedy's recorded statement is denied.

## III.

GM also seeks to discover other insurance claims files, including the summary of Kennedy's recorded statement prepared on July 27, 2002, and the investigation report of the insurance adjuster, prepared on August 13, 2002.  Kennedy asserts that these files are work product prepared in anticipation of litigation and therefore protected from discovery.  *See* Fed. R. Civ. P. 26(b)(3).  "The work product privilege operates to ensure that an opponent cannot secure materials that an adversary has prepared in anticipation of litigation."  *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998).  In a diversity case, the Court applies federal law to resolve work product claims.  *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002).  The Eighth Circuit has ruled that "the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation," *id.*, as "the work product rule does not come into play merely because there is a remote prospect of future litigation," *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977).

GM argues that "unless and until an insurance company can demonstrate that it reasonably considered a claim to be more likely than not headed for litigation, the natural inference is that the documents in its claims file that predate this realization were prepared in the ordinary course of business . . . ."  *S.D. Warren Co. v. Eastern Elec. Corp.*, 201 F.R.D. 280, 285 (D. Me. 2001).  Here, it was obvious on the night of the accident that claims would be asserted against Kennedy.  It is undisputed that Kennedy's vehicle crossed the median of an interstate highway and crashed into oncoming traffic.  As a result, one person was killed and two others were injured.  A reasonable person would expect litigation to ensue.  Documents prepared afterwards would have been created

in anticipation of litigation.  Those documents are therefore protected by the work-product doctrine. *See Diversified Indus.*, 572 F.2d at 603 ("While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer.").

Documents covered by the work-product doctrine can nevertheless be discovered if a party shows a "substantial need" of the documents and an inability to obtain a substantial equivalent of the documents or information without "undue hardship."    Fed. R. Civ. P. 26(b)(3); *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997).  However, a "party . . . does not demonstrate substantial need when it merely seeks corroborative evidence."  *Baker*, 209 F.3d at 1054.  GM has had the opportunity to depose each eye witness of the accident, including Ann Kennedy, in addition to any person with knowledge of the accident.  GM's desire to obtain "immediate factual observations unmarred by the passage of time" does not rise to the level of substantial need imposed by Rule 26. In short, documents prepared by Kennedy's insurer, on the facts of this case, are protected by the work-product doctrine because they were prepared in anticipation of litigation and because GM has failed to demonstrate a substantial need for them.

## IV.

GM also seeks to discover any non-party witness statements obtained by Kennedy's insurer during the course of its investigation.  In fact, GM asserts that "counsel for Kennedy agreed to produce witness statements informally by letter dated August 23, 2006" and that "[a]fter several follow up attempts to actually obtain possession of the statements, . . . Kennedy's counsel reneged on his agreement to produce the statements."   Local Rule 7.4 provides, "[t]he court will not recognize any agreement between counsel, if counsel differ as to its terms, unless the agreement has been reduced to writing."  As evidence of the agreement, GM cites a letter dated August 23, 2006,

from Kennedy's lawyer, Bruce McMullen, to GM's lawyer, William Leach.  The letter states that neither lawyer had an obligation to provide his client's statement, but that McMullen would nevertheless search the files for any statements he could find.  McMullen did not promise in the letter to produce witness statements.  Thus, to the extent that GM has moved to enforce an agreement to produce witness statements, that motion is denied.

Notes taken during witness interviews by Kennedy's insurer and provided to her attorney are protected by the work-product doctrine.  *Baker*, 209 F.3d at 1054.  However, any verbatim non-party witness statements are neither privileged nor work product and must be produced.

## CONCLUSION

GM's motion to compel production of Kennedy's statement is denied.  GM's motion to compel production of the insurer's claim file is denied except as to verbatim statements of persons other than Kennedy.  Kennedy must produce all verbatim, non-party witness statements within five business days after entry of this Order.  GM's request to be reimbursed for the reasonable expenses in making this motion, including reasonable attorneys' fees, is denied.  Document #181.

IT IS SO ORDERED this 5th day of October, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE